23-7972
*Sanchez Juarez, et al. v. Siderakis, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of December, two thousand twentyu-four.

PRESENT:
> DENNY CHIN,
> BETH ROBINSON,
> ALISON J. NATHAN,
>> *Circuit Judges.*

───────────────────────────────────────────

MARCO ANTONIO SANCHEZ JUAREZ, JANET GUTIERREZ, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,

> *Plaintiffs-Appellees*,

v.                                                                 No. 23-7972

MICHAEL SIDERAKIS,

> *Defendant-Cross-Claimant-Appellant;*

156-40 GRILL LLC, GREEK GRILL CROSSBAY CORP, MARIA KARRAS-POLLATOS, EVANGELOS POLLATOS, KONSTANTINOS SIKLAS,

*Defendants.*[*]

| | |
|---|---|
| FOR APPELLANT: | Brian J. Hufnagel (Lawrence Morrison, Arthur Forman, *on the brief*), Morrison & Tenenbaum PLLC, New York, New York. |
| FOR APPELLEE: | AARON B. SCHWEITZER (John Troy, and Tiffany Troy, *on the brief*), Troy Law, PLCC, Flushing, New York. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Amon, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on November 28, 2023, is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for entry of a modified judgment specifying the damages for which the defendants, including Defendant-Appellant Michael Siderakis, are jointly and severally liable consistent with the discussion set forth below.

Siderakis appeals the district court's judgment, following a bench trial, (1) declaring Siderakis an "employer" and (2) awarding Plaintiffs-Appellees Marco Antonio Sanchez Juarez ("Sanchez") and Janet Guiterrez damages in connection

---

[*] The Clerk is respectfully instructed to amend the caption as set forth above.

2

with their claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

Around October 2012, Siderakis and his business partner, Defendant Konstantinos Siklas, agreed to open a Greek restaurant, Taverna Grill, with Defendant Evangelos Pollatos. The operating agreement identified Siderakis as the general manager.[1]

After they agreed to open the restaurant, Pollatos, Siderakis, and Siklas took Sanchez to a Brooklyn diner where he cooked as an audition for employment at Taverna Grill. Shortly thereafter, the trio met with Sanchez to discuss his salary and menu items. Sanchez orally agreed to work at the restaurant six days per week at a rate of $1,000 per week.

Taverna Grill opened in March 2013. Almost immediately, Sanchez was not paid what he was owed. He worked seven days a week and was either not paid at all or was paid less than the full amount due. After four months, Sanchez

---

[1] Although functionally Siderakis and Siklas worked with Pollatos in opening the restaurant, Siderakis, Siklas, and Pollatos's wife, Defendant Maria Karras-Pollatos, were the members of the LLC that operated the restaurant.

3

spoke with Siderakis, Siklas, and Pollatos, and asked to work six days per week. Pollatos granted that request. Sanchez worked six days a week until Pollatos fired him in January 2014, the same month that Taverna Grill permanently closed.

Pollatos hired Gutierrez in March 2013. She was hired to work six days per week at a rate of $600. Like Sanchez, she was not always paid the full amount that she was owed. She ultimately left Taverna Grill in June 2013.

Siderakis and Siklas walked away from the partnership in September 2013. Pollatos took sole responsibility for restaurant operations from then until Taverna Grill permanently closed.

Sanchez and Gutierrez brought a class action alleging a host of FLSA and NYLL violations. The district court held a two-day bench trial, after which it concluded that Pollatos, Siderakis, and Siklas were employers for the purposes of the FLSA and NYLL. After additional briefing, the district court entered a final judgment awarding damages to the plaintiffs.

On appeal, Siderakis challenges the district court's conclusion that he is an employer within the meaning of the FLSA and the NYLL such that he can be held individually liable. He also argues that the district court's judgment

4

awarding damages is insufficiently specific as to the damages for which he is liable. We reject Siderakis's contentions regarding the district court's liability determination but agree that the district court's final judgment needs clarification.

"[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013).[2] And "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." *Id.*

In determining whether an individual is an "employer" we focus on "whether the individual possessed operational control over employees." *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018).[3] If an individual's "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment" then that individual exercises operational control over employees. *Id.*

---

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

[3] Because no party argues otherwise or cites contrary authority, "For purposes of this appeal, we assume, without deciding, that the tests for 'employer' status are the same under the FLSA and the NYLL." *Tapia*, 906 F.3d at 61 n.1.

In *Carter v. Dutchess Community College*, we identified four factors relevant to this inquiry:

> whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

735 F.2d 8, 12 (2d Cir. 1984). "No one of the four factors standing alone is dispositive." *Tapia*, 906 F.3d at 61.

We review the district court's ultimate decision as to whether a party is an employer without deference. *Id.* However, the "district court's findings of historical fact and findings as to the existence and degree of each factor [] are findings of fact that must be accepted on appeal unless clearly erroneous." *Id.* A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Otal Investments Ltd. v. M/V Clary*, 673 F.3d 108, 113 (2d Cir. 2012).

The district court did not clearly err in its factual findings regarding the applicability of each of the *Carter* factors, and we agree with the court's legal

6

conclusion that Siderakis had sufficient operational control to be deemed an employer under the FLSA.

As to the first *Carter* factor, the court did not commit clear error in finding that Siderakis had the authority to hire and fire employees. Sanchez testified that Siderakis, Siklas, and Pollatos took him to his audition, and that, subsequently and in "combination," they told him that he would be paid $1,000 per week. App'x at 252-53. Siklas testified that he, Pollatos, and Siderakis as a group had the authority to hire employees.

Nor was it clear error to find that the second *Carter* factor—that Siderakis supervised and controlled work schedules or conditions of employment—was satisfied. Sanchez testified that Siderakis came to the restaurant two to three days per week, was there from about 3:00 p.m. until closing, and was "in charge of the restaurant, checking the food, how the food came out, [and] how the customers were." App'x at 264. He also told people how to cook the food, and sometimes set the special of the day. *Id.* at 265. Sanchez also testified that when he wanted to change his schedule, he asked Siderakis first, then Pollatos, then Siklas. His understanding was that in considering his request, the three "would speak amongst each other." *Id.* at 260. And after the restaurant was forced to

7

close for two weeks due to a staff walkout, both Pollatos and Siderakis called Sanchez and asked him to return to work. Gutierrez also testified that both Pollatos and Siderakis were in charge of the restaurant. *Id.* at 319-20. This evidence supports the district court's finding that Siderakis supervised and controlled work schedules and conditions of employment. *See Irizzary*, 722 F.3d at 109 ("To be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment.").

It was also not clearly erroneous for the district court to find that the third and fourth *Carter* factors were satisfied. In addition to the above testimony regarding Siderakis's role in setting Sanchez's salary, Pollatos testified that he paid employees "[u]nder the direction of Mike Siderakis." Dist. Ct. Dkt. 117-2 at 27. Specifically, Pollatos testified that Siderakis would give him an envelope for each employee with their name, the salary they were owed, and acknowledgments of receipt that he insisted Pollatos have each employee sign. Pollatos testified that Siderakis "was very persistent that no one is to get a salary or a pay without signing" a slip, *id.* at 168, and that Pollatos would return the signed slips to Siderakis. All of this evidence supports the district court's

8

conclusion that Siderakis determined the rate and method of payment and maintained employment records. *See Irizzary*, 722 F.3d at 115 (noting that "the key question is whether the defendant had the authority to sign paychecks throughout the relevant period").

Much of Siderakis's argument on appeal asks us to view and weigh the evidence differently than the district court. For example, he contends that because of personal and business disagreements, Siderakis left the venture within two weeks and was officially removed as a member of the new company a few months later. But, the district court found, based on the testimony of Sanchez, Gutierrez, and Pollatos, that Siderakis did not leave Taverna Grill until September 2013. This finding was not clearly erroneous based on the bench trial testimony. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 565 (1985) ("When findings are based on determinations regarding the credibility of witnesses, [Fed. R. Civ. P.] 52(a) demands even greater deference to the trial court's finding[s].").

Putting these factual findings together, we agree with the district court's determination that Siderakis was an employer, and its judgment holding him liable for damages.

9

Though we reject Siderakis's challenge to the district court's determination that he is liable under FLSA and NYLL, we agree that the district court's final judgment fails to adequately specify the amount of damages for which he is liable. In its judgment, the district court outlined the amount of damages for unpaid wages, unpaid overtime wages, spread of time wages, and liquidated damages awarded *to* Sanchez and Gutierrez. *Sanchez v. 156-40 Grill LLC*, No. 15-cv-5081, 2023 WL 8238890, at *3-6 (E.D.N.Y. Nov. 28, 2023). The court then ruled that "Pollatos, Siderakis, and Siklas are jointly and severally liable for damages incurred through September 2013, and Pollatos is responsible for damages for the remainder of the relevant time period." *Id.* at *6. While Gutierrez's damages were incurred entirely within the period for which all three defendants are jointly and severally liable, Sanchez's damages were incurred both before *and after* September 2013. Siderakis and Siklas are jointly and severally liable only for those damages incurred *before* they ceased being employers in September 2013. Neither the district court's judgment itself, nor the accompanying order that includes specific damages calculations, however, specifies the damages incurred by Sanchez during the precise period (March-September 2013) for which Siderakis is jointly and severally liable. Because the judgment does not specify

10

the damages incurred during the time period for which Siderakis is jointly and severally liable, Siderakis argues that he cannot comply with the judgment.

We agree. Although the final judgment describes a framework for determining the damages for which Siderakis is liable, it does not specify the amount of those damages. On remand, the district court shall specify the damages for which Siderakis is jointly and severally liable and amend the judgment accordingly.

* * *

We have considered Siderakis's remaining arguments and conclude that they are without merit.[4] Accordingly, the district court's judgment as to Siderakis's liability is **AFFIRMED** and its judgment as to the damages for the limited time period Siderakis was an employer is **VACATED** and remanded for modification of the judgment to specify the damages for which all defendants,

---

[4] Siderakis argues that in assessing his liability for damages, the district court erred by imputing to him concessions regarding damages that his co-defendants, Pollatos and Karras-Pollatos, made in their post-trial briefing. We see no error. After the evidentiary hearing, all parties submitted proposed findings and conclusions. Relying on evidence adduced at the hearing, the plaintiffs submitted detailed damages calculations. In their responsive filing, Pollatos and Karras-Pollatos conceded some of the plaintiffs' arguments. In their own post-hearing filing, Siderakis and Siklas focused exclusively on the question of whether they were employers. Though they did not expressly concede damages, they also did not dispute plaintiffs' evidence of damages. Regardless, the district court's damage calculation was ultimately based on the evidence adduced during the bench trial and at the hearing.

11

including Siderakis, are jointly and severally liable, as distinct from those damages for which only Pollatos is liable.

                    FOR THE COURT:
                    Catherine O'Hagan Wolfe, Clerk of Court

12